UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH FORTH, #197279,

        Plaintiff,                                 Hon. Hala Y. Jarbou

v.                                                    Case No. 1:22-cv-390

T. LEBO, et. al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

       This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 24). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be granted in part and denied in part. The undersigned further recommends that Plaintiff's claims against the unidentified Doe Defendants be dismissed without prejudice for failure to timely effect service.

**BACKGROUND**

       Plaintiff initiated this action against several named individuals and ten unidentified individuals. (ECF No. 1). Plaintiff subsequently amended his complaint. (ECF No. 16). In his amended complaint, Plaintiff alleges the following.

       As of April 29, 2020, Plaintiff was incarcerated at the Carson City Correctional Facility (DRF). On this date, Plaintiff was "struck by an unknown assailant" and suffered a broken jaw. Plaintiff was transported to a hospital the following day where

-1-

his jaw was "wired shut." Plaintiff was discharged from the hospital on May 3, 2020, "with instructions for a full liquid diet." Upon discharge, Plaintiff weighed 195 pounds.

On May 4, 2020, Shary Henderson, a dental services provider, noted that "[n]ursing already ordered a full liquid diet." Henderson issued an accommodation for Plaintiff to receive "a straw to accompany the full liquid diet." Later that same day, Registered Nurse Luba Nagorny noted that Plaintiff had a "special diet and straw." Nagorny further noted that information regarding Plaintiff's "special diet" had been "given to [a] CO in segregation [where Plaintiff was housed] and kitchen." On May 5, 2020, Registered Nurse Allison Melinowski submitted a diet request form indicating that Plaintiff was to receive a "full liquid diet with straw." This accommodation was scheduled to begin that day and extend through June 16, 2020. Plaintiff was not provided with a liquid diet, however.

On May 25, 2020, Plaintiff submitted a "medical kite indicating that he felt very weak." Prior to submitting this kite, Plaintiff "had already been complaining about the failure to provide him with a liquid diet to medical and corrections staff." On May 26, 2020, Michelle Stephan, mental health care provider, met with Plaintiff but "noted no mental health concerns" regarding Plaintiff, despite the fact that Plaintiff was, by this time, "losing significant amounts of weight and was losing his cognitive faculties."

On May 30, 2020, Plaintiff was examined by an unidentified healthcare provider. Plaintiff was unable to stand without the assistance of two people. Plaintiff "complained of weakness due to an inability to eat the non-liquid foods he was being

-2-

given." The following day, Plaintiff was examined by Registered Nurse Kim Silvernail who noted that Plaintiff "appeared very weak." Plaintiff reported that he was supposed to be receiving a liquid diet, but was continuing to receive "food like salads, mashed potatoes with skins, and whole vegetables such as peas and carrots, especially at supper time."

On an unidentified date, Plaintiff spoke with T. Lebo, the Director of Food Services, who assured Plaintiff that "the issue of his diet would be looked into." Lebo, however, "never took any action to ensure that [Plaintiff] received his full liquid diet." On an unidentified date, R.N. Nagorny communicated with Plaintiff and, despite knowing that Plaintiff "was not receiving his full-liquid diet," did "nothing" to assist Plaintiff obtain his prescribed diet. Likewise, nurse Nicole Buskirk "often interacted with" Plaintiff throughout May 2020. Despite observing Plaintiff "lose significant amounts of weight, lose cognition, and lose his ambulatory capabilities," Buskirk "did nothing to assist Plaintiff obtain his prescribed diet.

On May 31, 2020, Plaintiff "began crying out for help because he could not move, he was in a lot of pain, and he felt that he was dying." Plaintiff was eventually taken to healthcare where it was noted that he weighed only 162 pounds and was receiving "imbalanced nutrition: less than body requirements." Nurse Silvernail contacted food service "to be sure that [Plaintiff] is getting correct diet." After speaking with someone in food service, however, Silvernail noted that she was "unsure if he understood what a full liquid diet is." Despite her misgivings, Silvernail took no further action to ensure

-3-

that Plaintiff was receiving his prescribed diet or was otherwise receiving adequate nutrition. On June 1, 2020, Plaintiff was taken to a hospital after experiencing renal failure.

Plaintiff has sued the following individuals: (1) T. Lebo; (2) Luba Nagorny; (3) Kim Silvernail; (4) Michelle Stephan; and (5) Nicole Buskirk. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Defendants Nagorny, Silvernail, Stephan, and Buskirk now move for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence,

which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

### I. Defendants' Motion for Summary Judgment

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of their motion, Defendants identify three grievances which Plaintiff pursued and which, according to Defendants, fail to properly exhaust any of Plaintiff's claims against them. A review of these grievances reveals the following.

A.    Grievance 21-08-2118-09z

Plaintiff filed this grievance on August 10, 2021, alleging that an unknown Food Service Supervisor failed to provide him with his prescribed liquid diet. (ECF No. 28 at PageID.511). Plaintiff's grievance was denied on the ground, asserted by Defendant Lebo, that "food service did not receive [Plaintiff's] special accommodation for his special meal and the liquid diet was never processed through to food service in Omni." (*Id.* at PageID.512). This rejection was upheld through all three steps of the grievance process. (*Id.* at PageID.510). This grievance was not asserted against Defendants Nagorny, Silvernail, Stephan, or Buskirk. The undersigned concludes, therefore, that this grievance fails to exhaust any of Plaintiff's claims against the moving defendants.

-8-

B.     Grievance DRF 21-09-2495-28i

Plaintiff submitted this grievance on September 28, 2021. (ECF No. 28 at PageID.506). Plaintiff specifically asserted that his grievance was being asserted against Defendants Nagorny and Silvernail, as well as numerous other individuals. (*Id.* at PageID.507). In his grievance, Plaintiff alleged that the individuals against whom the grievance was asserted "failed to notify Segregation Staff and Food Service Staff" of Plaintiff's liquid diet accommodation. (*Id.*).

As for why he was asserting a grievance against this particular group of people, Plaintiff asserted that it was not until September 24, 2021, when he received the Step I rejection to the grievance discussed immediately above, that he learned that Defendant Lebo had taken the position that Plaintiff did not receive his liquid diet because food service never received notification of such. (*Id.*). Thus, it was not until September 24, 2021, that Plaintiff was put on notice that he had a basis for asserting a grievance against the individuals named therein.

Plaintiff's grievance was rejected at all three steps because Plaintiff allegedly "failed to attempt to resolve issue" prior to filing a grievance. (*Id.* at PageID.503-06). No further explanation was provided. Thus, the precise nature of Plaintiff's failure is not clear from the grievance responses. In their motion, however, Defendants have submitted evidence in support of their position that Plaintiff's shortcoming was that he made no attempt, in May 2020, to resolve the matter with health care staff.

Specifically, Defendants have submitted affidavits executed by Kelly Stevens and Lisa Becher, the DRF Nursing Supervisor and DRF Grievance Coordinator, respectively. (ECF No. 28 at PageID.530-538). Becher asserts that after receiving Plaintiff's Step I grievance she contacted Stevens who responded that Plaintiff made no attempt to resolve the matter with healthcare staff. (*Id.* at 530-34). Stevens, however, does not assert that she ever examined or spoke with Plaintiff. Instead, Stevens merely asserts that Plaintiff's medical records do not record that Plaintiff raised any issue or complaint regarding his liquid diet between the dates of May 4, 2020, and May 30, 2020. (*Id.* at PageID.536-38). According to Defendants, this establishes that Plaintiff failed to attempt to resolve his complaint with the appropriate people prior to filing his grievance.

Defendants' argument, however, is unpersuasive for at least two reasons. First, Stevens has no first-hand knowledge what Plaintiff said or communicated to his care providers during the several weeks during which he was allegedly denied his prescribed liquid diet. Thus, her affidavit falls short of satisfying Defendants' burden on the question of exhaustion. Second, Plaintiff has submitted an affidavit in which he asserts that he did, in fact, report, on several occasions, that he was not receiving his prescribed liquid diet. (ECF No. 34 at PageID.593-97).

While reluctant to interject itself into the MDOC's prison grievance process, the Court is not obligated to simply disregard errors or mistakes in the enforcement or application of prison grievance policies. *See, e.g., Burnett v. Walsh*, 2020 WL 3716555 at *3-4 (E.D. Mich., June 15, 2020) (court recommended that motion for summary

judgment on failure to exhaust grounds be denied after finding that MDOC "improperly rejected" prisoner's grievance)[1]; *Ashley v. Boayue*, 2020 WL 5985203 at *5-6 (E.D. Mich., Feb. 18, 2020) (court recommended that motion for summary judgment on failure to exhaust grounds be denied in part after finding that MDOC "improperly rejected" prisoner's grievance)[2].

The Court, therefore, rejects the decision by prison officials to reject Plaintiff's grievance on the ground that he failed to attempt resolution of the issue prior to filing a grievance. As discussed above, there exists a genuine factual dispute on the question whether Plaintiff contemporaneously reported to his care providers and others that he was not receiving his prescribed liquid diet.

The undersigned concludes, therefore, that Defendants have not met their burden to establish that Plaintiff failed to comply with the requirement that he attempt to resolve the issue prior to filing a grievance. Accordingly, the undersigned finds that this grievance exhausts Plaintiff's claims against Defendants Silvernail and Nagorny, but not Defendants Stephan or Buskirk as they were not named in the grievance.

C. Grievance 21-08-2117-28i

Plaintiff filed this grievance against "unknown nurses at DRF" for failing to take action when food service failed to provide him with his prescribed liquid diet. (ECF

---

[1] This recommendation was adopted as the opinion of the Court after no party objected thereto. *Burnett v. Walsh*, 2020 WL 3639564 (E.D. Mich., July 6, 2020).

[2] This recommendation was adopted as the opinion of the Court after no party objected thereto. *Ashley v. Boayue*, 2020 WL 4282198 (E.D. Mich., July 27, 2020).

-11-

No. 28 at PageID.516). This grievance was also rejected on the ground that Plaintiff "failed to attempt to resolve issue." (*Id.*). No further explanation was provided, but just as with the grievance discussed in the preceding section, Defendants assert that Plaintiff's failure was that he made no attempt, in May 2020, to resolve the matter with health care staff. For the same reasons articulated above, however, the affidavits submitted by Kelly Stevens and Lisa Becher are insufficient to satisfy Defendant's burden on the question of exhaustion.

Next, it must be determined whether this grievance was asserted against any of the moving defendants. This grievance was asserted against "unknown nurses." The grievance was not rejected on the ground that Plaintiff failed to identify by name the persons against whom the grievance was asserted. As such, Defendants cannot now assert this failure as a basis to find Plaintiff's grievance lacking. *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (where prison officials declined to enforce a grievance-related procedural requirement, such as the requirement to identify by name the individuals against whom a grievance is asserted, defendant cannot rely on the prisoner's failure to comply with the procedure in question to obtain dismissal on exhaustion grounds); *see also, Does 8-10 v. Snyder*, 945 F.3d 951, 961-62 (6th Cir. 2019) (same).

In his amended complaint Plaintiff identified Defendants Silvernail, Nagorny, and Buskirk as nurses. Thus, as to these Defendants, the undersigned finds that Defendants have failed to meet their burden on the question whether Plaintiff exhausted

his administrative remedies. In his amended complaint, Plaintiff identified Defendant Stephan as a mental health care provider rather than a nurse. This grievance was not asserted against Defendant Stephan and, therefore, fails to exhaust any of Plaintiff's claims against Defendant Stephan.

## II. Doe Defendants

Federal Rule of Civil Procedure 4(c) indicates that "[a] summons must be served with a copy of the complaint." The time frame within which service must be effected is articulated in Rule 4(m), which provides that if service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint, "the court - on motion or on its own initiative after notice to the plaintiff - must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See also*, *Abel v. Harp*, 122 Fed. Appx. 248, 250 (6th Cir., Feb. 16, 2005) ("[a]bsent a showing of good cause to justify a failure to effect timely service, the Federal Rules of Civil Procedure *compel* dismissal") (emphasis added).

Plaintiff is represented by counsel who initiated this action more than 15 months ago. Since then, counsel has not requested an extension to identify or serve the unidentified Doe Defendants. Considering counsel's lack of diligence, the undersigned recommends that Plaintiff's claims against the Doe Defendants be dismissed without prejudice for failure to timely effect service.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 24) be granted in part and denied in part. Specifically, the undersigned recommends that Plaintiff's claims against Defendant Stephan be dismissed without prejudice for failure to exhaust administrative remedies, but that Plaintiff's claims against Defendants Silvernail, Nagorny, and Buskirk go forward. The undersigned further recommends that Plaintiff's claims against the Doe Defendants be dismissed without prejudice for failure to timely effect service.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 12, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge